IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

JEREMY JOSEPH DURRENBERGER,      §
                                 §
            Plaintiff,           §
                                 §
v.                               §      CIVIL ACTION NO. H-09-0786
                                 §
TEXAS DEPARTMENT OF CRIMINAL     §
JUSTICE,                         §
                                 §
            Defendant.           §

## MEMORANDUM OPINION AND ORDER

Plaintiff, Jeremy Joseph Durrenberger, brings this action against defendant, Texas Department of Criminal Justice (TDCJ), under Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12181, and the Rehabilitation Act of 1973 (RA), 29 U.S.C. § 794, for damages, declaratory and injunctive relief, attorney's fees, and costs of suit.[1]  Pending before the court are Defendant, The Texas Department of Criminal Justice's Motion for Summary Judgment (Docket Entry No. 40), and Plaintiff Jeremy Durrenberger's Motion for Summary Judgment Against TDCJ (Docket Entry No. 41). For the reasons explained below, TDCJ's motion will be denied, and Durrenberger's motion will be granted in part and denied in part.

---

[1]Durrenberger's First Amended Complaint (Docket Entry No. 9) also asserts claims for damages under Chapter 21 of the Texas Human Resources Code; but in Plaintiff Jeremy Durrenberger's Response to Defendant's Motion for Summary Judgment (Durrenberger's Response, Docket Entry No. 42, p. 1 n.1), "Durrenberger concedes this court lacks jurisdiction to hear his state law claims due to sovereign immunity principles, and agrees his state law claims should be dismissed."

## I.  __Standard of Review__

Summary judgment is authorized if the movant establishes that there is no genuine dispute about any material fact and the law entitles it to judgment.  Fed. R. Civ. P. 56(c).  Disputes about material facts are "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2511 (1986).  The Supreme Court has interpreted the plain language of Rule 56(c) to mandate the entry of summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 106 S.Ct. 2548, 2552 (1986).  A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case."  Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (quoting Celotex, 106 S.Ct. at 2553-2554).  If the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial.  Id. (citing Celotex, 106 S.Ct. at 2553-2554).  In reviewing the evidence "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility

-2-

determinations or weigh the evidence." <u>Reeves v. Sanderson</u>
<u>Plumbing Products, Inc.</u>, 120 S.Ct. 2097, 2110 (2000).  Factual
controversies are to be resolved in favor of the nonmovant, "but
only when . . . both parties have submitted evidence of
contradictory facts." <u>Little</u>, 37 F.3d at 1075.

## II.  <u>Undisputed Facts</u>

Jeremy Bryson is serving a sentence at TDCJ for an aggravated
assault on plaintiff, Jeremy Durrenberger.[2]  Durrenberger and
Bryson are not related but are friends.[3]  Since February of 2009
Durrenberger has visited Bryson at TDCJ's Hughes Unit more than
seven times but less than twenty times.[4]  Inmates are allowed to
have contact visits with family members and individuals with whom
they have a special relationship, but are not allowed to have
contact visits with others.[5]  Contact and non-contact visits with

---

[2]Affidavit of Major Fred Tadlock included in Appendix attached
to Defendant, The Texas Department of Criminal Justice's Motion for
Summary Judgment (TDCJ's Motion for Summary Judgment), Docket Entry
No. 40, ¶ 4.

[3]<u>Id.</u>  <u>See also</u> Declaration of Jeremy Durrenberger, Exhibit B
attached to Plaintiff Jeremy Durrenberger's Motion for Summary
Judgment Against TDCJ (Durrenberger's Motion for Summary Judgment),
Docket Entry No. 41, ¶ 5.

[4]Plaintiff's Responses and Objections to Defendant's First Set
of Interrogatories to Plaintiff, included in Appendix attached to
TDCJ's Motion for Summary Judgment, Docket Entry No. 40,
(Interrogatory # 4).  <u>See also</u> Declaration of Jeremy Durrenberger,
Exhibit B attached to Durrenberger's Motion for Summary Judgment,
Docket Entry No. 41, ¶ 19.

[5]Affidavit of Major Fred Tadlock included in Appendix attached
to TDCJ's Motion for Summary Judgment, Docket Entry No. 40, ¶ 3.
(continued...)

inmates all occur in a large, open, concrete room that holds about 100 people.[6]  During contact visits, inmates sit at tables across from visitors.   During non-contact visits inmates and their visitors sit in partitioned glass booths equipped with telephones.[7] The large, concrete room where visits occur is noisy since visits with inmates only occur for a limited time once a week.[8]

Durrenberger is hearing impaired. Durrenberger's hearing impairment makes it difficult for him to hear when a speaker is not in close proximity to him, when there is more than one person speaking, and/or when background noise is present.   In 2004 Durrenberger asked his employer to install a new handset equipped with an amplifying volume control on his office telephone.[9]

On February 22, 2009, Durrenberger went to visit Bryson at the Hughes Unit.  Upon arrival at the visitation room Durrenberger told

---

[5](...continued)
See also Deposition of Warden Dawn Grounds included in Appendix attached to TDCJ's Motion for Summary Judgment, Docket Entry No. 40, p. 12.

[6]Deposition of Fred Tadlock included in Appendix attached to TDCJ's Motion for Summary Judgment, Docket Entry No. 40, pp. 13-16.

[7]Affidavit of Major Fred Tadlock included in Appendix attached to TDCJ's Motion for Summary Judgment, Docket Entry No. 40, ¶ 3.

[8]Id.  See also Deposition of Fred Tadlock included in Appendix attached to TDCJ's Motion for Summary Judgment, Docket Entry No. 40, p. 16; Deposition of Warden Dawn Grounds included in Appendix attached to TDCJ's Motion for Summary Judgment, Docket Entry No. 40, p. 16.

[9]Declaration of Jeremy Durrenberger, Exhibit B attached to Durrenberger's Motion for Summary Judgment, Docket Entry No. 41, ¶¶ 3-4.

the commanding officer that he has a hearing impairment and asked to be placed in a handicapped booth.  The commanding officer told Durrenberger that the Hughes Unit was not equipped with handicapped booths.  Durrenberger was placed in a standard visitation booth and was not able to hear Bryson over the telephone.[10]

On February 23, 2009, Durrenberger contacted the warden's office and TDCJ's main office to request an accommodation for his hearing impairment.  On February 27, 2009, Warden Dawn Grounds called Durrenberger but was not able to offer him an accommodation.[11]

On March 8, 2009, Durrenberger went to the Hughes Unit to visit Bryson and was allowed a contact visit.[12]

On April 4, 2009, Durrenberger again went to the Hughes Unit to visit Bryson.  Upon arrival Durrenberger spoke with Major Fred Tadlock who refused his request for a contact visit because TDCJ policy does not allow contact visits for non-family members. Instead, Tadlock placed Durrenberger in an end booth (Booth #1)

---

[10]Id. ¶ 8.  See also Deposition of Fred Tadlock included in Appendix attached to TDCJ's Motion for Summary Judgment, Docket Entry No. 40, p. 17 (confirming that the telephone receivers at the Hughes Unit are not equipped with volume control devices); Deposition of Warden Dawn Grounds included in Appendix to TDCJ's Motion for Summary Judgment, Docket Entry No. 40, pp. 10, 21-22 (TDCJ does not have volume controlled telephones.).

[11]Declaration of Jeremy Durrenberger, Exhibit B attached to Durrenberger's Motion for Summary Judgment, Docket Entry No. 41, ¶¶ 11-12.

[12]Id. ¶ 13.

because it was located as far away from other visitors as possible. Even though he was placed in Booth #1, Durrenberger still could not hear Bryson over the telephone.[13]

On April 12, 2009, Durrenberger was again allowed a contact visit with Bryson.[14]

On April 19, 2009, and on June 21, 2009, Durrenberger was placed in Booth #1 because it was farthest away from other visitors, but he still could not hear Bryson over the telephone.[15]

On June 7, 2009, Durrenberger asked to be seated in Booth #1 but was, instead, seated in Booth #5, which was only about four feet away from a family with children.  The background noise prevented Durrenberger from hearing Bryson over the telephone.[16]

Durrenberger has not always been allowed to visit with Bryson in Booth #1 because the booths are assigned randomly to prevent contraband drops.[17]  Durrenberger states that he told Tadlock that at least two alternative accommodations would be reasonable: (1) use of an attorney/client booth and (2) use of an amplifying

---

[13]Id. ¶ 14.  See also Affidavit of Major Fred Tadlock included in Appendix attached to TDCJ's Motion for Summary Judgment, Docket Entry No. 40, ¶ 4.

[14]Declaration of Jeremy Durrenberger, Exhibit B attached to Durrenberger's Motion for Summary Judgment, Docket Entry No. 41, ¶ 15.

[15]Id. ¶¶ 16 and 18.

[16]Id. ¶ 17.

[17]Deposition of Fred Tadlock included in Appendix attached to TDCJ's Motion for Summary Judgment, Docket Entry No. 40, p. 6.

device to increase the volume of the telephone receiver.[18]  Tadlock acknowledges that Durrenberger spoke to him about the possibility of obtaining an amplifying device for the telephone receiver,[19] but does not recall that Durrenberger ever asked him about using an attorney/client booth.[20]  Durrenberger states that he had planned to visit Bryson weekly for the duration of his incarceration, but has stopped visiting him because he is unable to communicate with Bryson over the telephones in the visitation booths.[21]

### III.  **Analysis**

Durrenberger has sued TDCJ for compensatory damages, declaratory and injunctive relief, and attorney's fees pursuant to the ADA and the RA for failure to provide reasonable accommodation for his hearing disability so that he is able to participate in the inmate visitation program at TDCJ's Alfred Hughes Unit in Gatesville, Texas.[22]  TDCJ contends that it is entitled to summary judgment because the immunity provided by the Eleventh Amendment

---

[18]Declaration of Jeremy Durrenberger, Exhibit B attached to Durrenberger's Motion for Summary Judgment, Docket Entry No. 41, ¶ 14.

[19]Deposition of Fred Tadlock included in Appendix attached to TDCJ's Motion for Summary Judgment, Docket Entry No. 40, p. 11.

[20]Id. at 20-21.

[21]Declaration of Jeremy Durrenberger, Exhibit B attached to Durrenberger's Motion for Summary Judgment, Docket Entry No. 41, ¶ 20.

[22]Durrenberger's Motion for Summary Judgment, Docket Entry No. 41, p. 1.

precludes Durrenberger's claims, and because there is no evidence that Durrenberger is a qualified individual with a disability or that TDCJ has not provided a reasonable accommodation for his disability.   Durrenberger has filed a cross-motion for summary judgment.

**A.   Eleventh Amendment Immunity**

TDCJ contends that it is entitled to summary judgment on Durrenberger's RA claim because Durrenberger has failed to present any evidence that TDCJ has waived its sovereign immunity and consented to suit under the RA by accepting federal financial assistance.   TDCJ contends that it is entitled to summary judgment on Durrenberger's ADA claim because Congress has not properly and validly abrogated its Eleventh Amendment immunity for such claims. Durrenberger responds that TDCJ is not entitled to sovereign immunity from his RA claim because TDCJ receives federal financial assistance, and that TDCJ is not entitled to sovereign immunity from his ADA claim because Title II of the ADA abrogated Eleventh Amendment immunity for such claims.   Alternatively, Durrenberger argues that TDCJ's immunity under the ADA is irrelevant because the rights and remedies under the ADA and the RA are the same.[23]

1.   <u>Applicable Law</u>

---

[23]Plaintiff Jeremy Durrenberger's Reply to Defendant's Response to Plaintiff's Motion for Summary Judgment (Durrenberger's Reply), Docket Entry No. 44, p. 1.

The Eleventh Amendment provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by citizens or subjects of any foreign state." United States Constitution, amend. XI.  Although by its express terms, the Eleventh Amendment bars only federal jurisdiction over suits brought against one state by citizens of another state or a foreign state, the Supreme Court has long held that the Eleventh Amendment also bars jurisdiction where, as here, a citizen brings suit against his own state in federal court.  See Idaho v. Coeur d'Alene Tribe of Idaho, 117 S.Ct. 2028, 2033 (1997) (citing Hans v. Louisiana, 10 S.Ct. 504 (1890)).  The Eleventh Amendment renders the states immune from any suit in law or equity brought by a state's own citizen unless one of two exceptions applies:  (1) the state has consented to suit, or (2) Congress has clearly and validly abrogated the state's immunity pursuant to the enforcement power conferred by § 5 of the Fourteenth Amendment.  Bennett-Nelson v. Louisiana Board of Regents, 431 F.3d 448, 451 (5th Cir. 2005), cert. denied, 126 S.Ct. 1888 (2006) (citing College Savings Bank v. Florida Prepaid Postsecondary Education Expense Board, 119 S.Ct. 2219, 2223 (1999)).  See also Tennessee v. Lane, 124 S.Ct. 1978, 1985 (2004).  Moreover, the state's Eleventh Amendment immunity extends to any state agency or entity deemed an "alter ego" or "arm" of the state.  See Perez v. Region 20 Education Service Center, 307 F.3d 318, 326

-9-

(5th Cir. 2002).  The parties do not dispute the fact that TDCJ is an "arm" of the State of Texas.  <u>See</u> <u>Harris v. Angelina County,</u> <u>Texas</u>, 31 F.3d 331, 338 n.7 (5th Cir. 1994) ("Under the current state of the law, the TDCJ is deemed an instrumentality of the state operating as its alter ego in carrying out a public function of the state, and is immune from suit under the Eleventh Amendment.").

2.   <u>TDCJ Has Waived Immunity from the RA Claim</u>

Durrenberger contends that TDCJ has waived its Eleventh Amendment immunity from suit under § 504 of the RA by accepting federal financial assistance.  Section 504 provides that:

> No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . .

29 U.S.C. § 794(a).  Public entities that accept federal financial assistance expressly waive their Eleventh Amendment immunity from claims brought under § 504 of the RA.  <u>See</u> 42 U.S.C. § 2000d-7(a)(1) ("A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of section 504 of the Rehabilitation Act of 1973 [29 U.S.C. § 794], . . . or the provisions of any other Federal statute prohibiting discrimination by recipients of Federal financial assistance.").  In <u>Pace v. Bogalusa City School Board</u>,

403 F.3d 272, 282 (5th Cir.) (en banc), cert. denied, 126 S.Ct. 416 (2005), the Fifth Circuit observed that § 2000d-7 "clearly, unambiguously, and unequivocally conditions receipt of federal funds . . . on the State's waiver of Eleventh Amendment immunity" for suits brought under the RA, and held that the waiver condition set forth in § 2000d-7 is a constitutionally permissible exercise of Congress's spending power. Id. at 285. See also Bennett-Nelson, 431 F.3d at 453 (citing Pace, 403 F.3d at 280-87).

TDCJ admits that it accepts federal financial assistance and that the Hughes Unit where TDCJ houses inmate Bryson is a publicly funded state prison.[24]   TDCJ acknowledges that it "may not be entitled to immunity under the [RA] because of its tacit waiver of immunity by receipt of federal funds,"[25] but nevertheless contends that it is entitled to sovereign immunity from Durrenberger's RA claims because "Durrenberger has not established [that] TDCJ's receipt of federal funds is related to Hughes Unit visitation facilities."[26]   TDCJ has not cited any authority supporting its contention that a state entity that accepts federal funds does not

---

[24]Defendant Texas Department of Criminal Justice's Responses and Objections to Plaintiff's First Set of Request for Admissions, Exhibit A attached to Durrenberger's Motion for Summary Judgment, Docket Entry No. 41, Requests for Admissions Nos. 6 and 7.

[25]Defendant, The Texas Department of Criminal Justice's Response to Plaintiff's Motion for Summary Judgment (TDCJ's Response), Docket Entry No. 43, p. 4.

[26]TDCJ's Motion for Summary Judgment, Docket Entry No. 40, p. 4.

waive its Eleventh Amendment immunity unless its receipt of federal funds is related to the particular program at issue.

"For purposes of [§ 504 of the RA], the term 'program or activity' means all of the operations of—. . . a department, agency, . . . or other instrumentality of a State . . . any part of which is extended Federal financial assistance." 29 U.S.C. § 794(b)(1)(A). In <u>Miller v. Texas Tech University Health Sciences Center</u>, 421 F.3d 342 (5th Cir. 2005) (en banc), <u>cert. denied</u>, 126 S.Ct. 1332 (2006), the Fifth Circuit explained that "[i]f the involved state agency or department accepts federal financial assistance, it waives its Eleventh Amendment immunity even though the federal funds are not earmarked for programs that further the anti-discrimination and rehabilitation goals of § 504." <u>Id.</u> at 349 (citing <u>Koslow v. Commonwealth of Pennsylvania</u>, 302 F.3d 161 (3d Cir. 2002), <u>cert. denied</u>, 123 S.Ct. 1353 (2003)). Because TDCJ admits that it receives federal financial assistance, because TDCJ does not dispute that it is an agency of the State of Texas, and because 42 U.S.C. § 2000d-7 unequivocally conditions receipt of federal financial assistance by state agencies on consent to suit in federal court for alleged violations of § 504 of the RA, the court concludes that TDCJ is not entitled to Eleventh Amendment immunity on Durrenberger's RA claims. <u>See</u> <u>Miller</u>, 421 F.3d at 349 (recognizing that receipt of federal funding by a state agency operated as a waiver of that agency's Eleventh Amendment immunity

-12-

to RA claims even though the funds are not earmarked for RA purposes).

3.    TDCJ's Claim to Immunity from ADA Claim Is Moot

Having determined that Eleventh Amendment immunity does not bar Durrenberger's RA claim, the court need not decide whether TDCJ is entitled to Eleventh Amendment immunity from Durrenberger's ADA claim because that claim duplicates his RA claim.    In Bennett-Nelson, 431 F.3d at 455, the Fifth Circuit addressed a case where, as here, several plaintiffs brought claims under both the RA and ADA, alleging that the defendant, a state university, failed to provide them "reasonable accommodations" as required by both Acts. Id.  After determining that the university had waived its immunity from suit under § 504 of the RA by accepting federal funding, the Fifth Circuit addressed the issue of whether Congress had validly abrogated the university's immunity under the ADA.   Id. at 454-55. Observing that "[t]he only material difference between the two provisions lies in their respective causation requirements," id. at 454, the Fifth Circuit described the difference as "immaterial" because where — as here — "a defendant fails to meet this affirmative obligation, the cause of that failure is irrelevant." Id. at 454-55.  The court explained that

> [i]n the instant case, there is no question that the
> complaint claims the University's failure to provide the
> demanded accommodations is the sole cause of the alleged
> denial of benefits to the plaintiffs.  That is to say,
> the plaintiffs claim that they were excluded from
> participation in their classes precisely to the extent
> that they were not accommodated with interpreters or note
> takers.  The question here is not whether or to what
> extent the plaintiffs suffer a disability under the ADA;

-13-

nor is the question whether the denial of the accommodation to that disability was caused solely or only in part by the animus of the defendants. The question is whether the failure to accommodate the disability violates the ADA; and the existence of a violation depends on whether under both the [RA] and the ADA, the demanded accommodation is in fact reasonable and therefore required. If the accommodation is required the defendants are liable simply by denying it. In short, causation is not the issue in the appeal presented today.

Id. at 455. The court concluded that, "having already held that sovereign immunity does not bar the appellants' claim under § 504, we need not address at this juncture the issue of abrogation under Title II of the ADA, because the rights and remedies under either are the same for purposes of this case." Id.

The conclusion reached by the Fifth Circuit in Bennett-Nelson applies with equal force to this case. As in Bennett-Nelson, Durrenberger is alleging that TDCJ violated the ADA and RA solely by refusing to provide a reasonable accommodation for his disability. Where a claim is based on the failure to provide reasonable accommodations, the ADA and RA are identical in scope. Accordingly, the court concludes that the question of whether Congress has appropriately abrogated TDCJ's immunity from the claim that Durrenberger has asserted under Title II of the ADA is moot.

**B.  Durrenberger is Entitled to Summary Judgment on His RA Claim**

Durrenberger argues (1) that he is entitled to summary judgment on his RA claim because the undisputed evidence establishes that he is a qualified individual with a disability, and (2) that TDCJ has discriminated against him solely by reason of his disability by failing to provide reasonable accommodations for

-14-

his known disability.  TDCJ does not dispute that Durrenburger is qualified to participate in the inmate visitation program. Instead, TDCJ contends that Durrenberger is not disabled, and that TDCJ has provided reasonable accommodations for any disability he may have.

    1.  <u>Durrenberger is Disabled</u>

       (a)  Applicable Law

For purposes of § 504 of the RA, "the term 'individual with a disability' means . . . any person who has a disability as defined in Section 12102 of Title 42 [*i.e.*, the ADA]."  29 U.S.C. § 705(20(B).  Section 12102 of Title 42 provides that "[t]he term 'disability' means, with respect to an individual—(A) a physical or mental impairment that substantially limits one or more major life activities of such individual."  42 U.S.C. § 12102(1)(A).  "[M]ajor life activities include, but are not limited to . . . hearing . . . [and] communicating."  42 U.S.C. § 12102(2)(A).  The ADA does not define the term "substantially limits," but regulations promulgated by the Equal Employment Opportunity Commission (EEOC) define that term to mean:

    (i)  Unable to perform a major life activity that the average person in the general population can perform; or

    (ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1).  In 2008 Congress amended § 12102 to
provide the following "rules of construction regarding the
definition of disability:"

> (A)  The definition of disability in this chapter shall
> be construed in favor of broad coverage of individuals
> under this chapter, to the maximum extent permitted by
> the terms of this chapter.
>
> (B)  The term "substantially limits" shall be interpreted
> consistently with the findings and purposes of the ADA
> Amendments Act of 2008.
>
> . . .
>
> (E)(i)  The determination of whether an impairment
> substantially limits a major life activity shall be made
> without regard to the ameliorative effects of mitigating
> measures such as--
>
> > (I)  . . . prosthetics including . . . hearing
> > aids and cochlear implants or other implantable
> > hearing devices . . .
> >
> > (II)  use of assistive technology;
> >
> > (III) reasonable accommodations or auxiliary aids
> > or services . . .

42 U.S.C. § 12102(4).  The 2008 amendments did not alter the
judicially established requirement that plaintiffs claiming
protection under the RA must have more than a diagnosis of an
impairment to prove a disability, and must "prove a disability by
offering evidence that the extent of the limitation in terms of
their own experience . . . is substantial." Albertson's, Inc. v.
Kirkingburg, 119 S.Ct. 2162, 2169 (1999).

       (b)   Analysis

As evidence that he is disabled, Durrenberger submits sworn statements that he has a hearing impairment that makes it difficult for him to hear when a speaker is not in close proximity to him or when background noise is present,[27] and that his hearing impairment requires him to use volume amplification devices to talk on the telephone.[28]  As evidence that his impairment substantially limits his ability to hear and communicate, Durrenberger states that he was unable to hear Bryson or to communicate with Bryson during visits conducted in TDCJ's visitation booths on February 22, 2009,[29] April 4, 2009,[30] April 19, 2009,[31] June 7, 2009,[32] and several times after June 21, 2009.[33]  As additional evidence that his hearing impairment substantially limits his ability to hear and communicate, Durrenberger submits two letters written by Brandy R.

---

[27]Declaration of Jeremy Durrenberger, Exhibit B attached to Durrenberger's Motion for Summary Judgment, Docket Entry No. 41, ¶ 3.

[28]Second Declaration of Jeremy Durrenberger, Exhibit A attached to Durrenberger's Response, Docket Entry No. 42, ¶¶ 5-6.

[29]Declaration of Jeremy Durrenberger, Exhibit B attached to Durrenberger's Motion for Summary Judgment, Docket Entry No. 41, ¶ 9.

[30]Id. ¶ 14.

[31]Id. ¶ 16.

[32]Id. ¶ 17.

[33]Id. ¶ 19.

Jacobson, a clinical audiologist who tested his hearing in February of 2006.  Jacobson writes that Durrenberger's test results

> indicated a mild sloping to moderate mixed hearing loss in the right ear and a moderate low frequency hearing loss rising to within normal limits falling to moderately-severe at 3000 HZ then rising to mild conductive hearing loss in the right ear. . .

> Durrenberger might have difficulty communicating when speech is spoken at a soft level or when the speaker is not face to face with him at close proximity.  He may experience difficulty hearing and understanding speech when there is background noise present or there are more than one person speaking.[34]

Asserting that "[v]isitation is inherently noisy as friends and family meet with inmates for a limited time once a week,"[35] TDCJ argues that Durrenberger is not disabled because "the average person also experiences hearing difficulties during visits."[36]  TDCJ explains that

> Durrenberger describes a hearing loss which makes it difficult for him to hear in a noisy environment. However, having hearing difficulty visiting in a noisy room is not substantially limiting considering others also have difficulty in the noisy environment.  Further, Durrenberger's letter of disability is unauthenticated and four years earlier than his visitation encounter . . . The letter is not proper summary judgment proof. Even were the letter proper summary judgment evidence, a

---

[34]Letter of May 16, 2006, included in Exhibit C attached to Durrenberger's Motion for Summary Judgment, Docket Entry No. 41. See also Letter of October 6, 2008, in Exhibit C attached to Durrenberger's Motion for Summary Judgment, Docket Entry No. 41.

[35]TDCJ's Motion for Summary Judgment, Docket Entry No. 40, p. 7.

[36]Id.

diagnosis of a condition is insufficient to prove
impairment.[37]

In support of its argument that Durrenberger is not disabled, TDCJ
cites Amyette v. Providence Health System, 2010 WL 2812895 (9th
Cir. 2010). In Amyette the Ninth Circuit reaffirmed the principle
recognized in Albertson's, 119 S.Ct. at 2169, that "'disability' is
a carefully defined term of art, which is measured by reference to
limitations on major life activities, not by reference to doctors'
past assessments of the plaintiff's condition." 2010 WL 2812895 at
*1 (citing Toyota Motor Manufacturing, Kentucky, Inc., v. Williams,
122 S.Ct. 681, 691 (2002), superseded by statute, Americans With
Disabilities Amendments Act of 2008, Pub. L. No. 110-325 (2008)).

Durrenberger's sworn statements that he has difficulty hearing
when a speaker is not in close proximity to him or when background
noise is present,[38] that he relies on volume amplification devices
to talk on the telephone,[39] and that he is unable to hear over the
telephones in TDCJ's visitation booths because they are not
equipped with volume control devices are evidence of his own
experience from which a reasonable fact-finder could conclude that
his hearing impairment substantially limits his ability to hear and
communicate when using a telephone. See Albertson's, 119 S.Ct. at

---

[37]TDCJ's Response, Docket Entry No. 43, p. 5.

[38]Declaration of Jeremy Durrenberger, Exhibit B attached to
Durrenberger's Motion for Summary Judgment, Docket Entry No. 41,
¶ 3.

[39]Second Declaration of Jeremy Durrenberger, Exhibit A attached
to Durrenberger's Response, Docket Entry No. 42, ¶¶ 5-6.

2169.  See also Ivy v. Jones, 192 F.3d 514, 516 (5th Cir. 1999)
(recognizing the need for particularized examination of how a
hearing impairment affects one's life activities).  Jacobson's
diagnosis    of    Durrenberger's    hearing    loss    corroborates
Durrenberger's testimony about his own experience.  This evidence
is sufficient to overcome TDCJ's motion for summary judgment.

Durrenberger argues that he is entitled to summary judgment
because TDCJ has not presented any evidence from which a reasonable
fact-finder could conclude that his hearing impairment does not
substantially limit his ability to hear and communicate.   TDCJ
contends that Durrenburger is not disabled because noisy conditions
in the visitation room make it difficult even for non-hearing
impaired individuals to hear and communicate, but TDCJ has not
presented any evidence that non-hearing impaired individuals are
unable to hear and/or communicate over the telephones provided in
the visitation booths.   Moreover, both Major Tadlock and Warden
Grounds testified that non-hearing impaired individuals have never
complained about the inability to hear and/or communicate over the
telephones in the visitation booths.[40]   In its motion for summary
judgment TDCJ also asserts that Durrenberger "admits he does not
use an auxiliary listening device such as he is requesting TDCJ

---

[40]Deposition of Fred Tadlock included in Appendix attached to
TDCJ's Motion for Summary Judgment, Docket Entry No. 40, p. 16;
Deposition of Warden Dawn Grounds included in Appendix attached to
TDCJ's Motion for Summary Judgment, Docket Entry No. 40, p. 21.

provide for him,"[41] but TDCJ has not provided the court any evidence that either supports this assertion[42] or contradicts Durrenberger's declaration that his hearing impairment prevents him from communicating by telephone unless the telephone is equipped with an amplification device.

---

[41]TDCJ's Motion for Summary Judgment, Docket Entry No. 40, p. 8 (citing Appendix p. 21).

[42]TDCJ cites page 21 of the Appendix attached to its Motion for Summary Judgment (Docket Entry No. 40), but that page does not contain any such admission. Instead, page 21 contains an interrogatory asking Durrenberger to describe any prosthetic devices that he regularly wears or carries to accommodate his hearing disability; an interrogatory to which Durrenberger objected. Moreover, in response to TDCJ's motion for summary judgment, Durrenberger submitted a second Declaration in which he states:

>   3.   Though I could probably benefit from wearing a hearing aid, I cannot afford to purchase one. I am able to live with my disability, however, through using some low-cost accommodations.
>
>                     . . .
>
>   5.   I shopped around until I could find a cell phone that I could raise the volume enough on so that I could hear. I also make do with other accommodations, such as routing my cell phone through the stereo system in my car when I am driving so I can raise the volume even higher. Though I am currently unemployed, my last employer had to install a volume amplification device on the phone I used at work. Basically, I need the volume on my phone to be much higher. Turning up the volume on my phones accommodates my disability.
>
>   6.   Though I do not wear hearing aids or other prosthetic devices, I do need the amplification devices built into my telephones to hear during phone conversations.

Second Declaration of Jeremy Durrenberger, Exhibit A attached to Durrenberger's Response, Docket Entry No. 42, ¶¶ 3, 5-6.

Durrenberger's evidence that he cannot hear over the telephone in general and over the telephones in TDCJ's visitation booths in particular, and TDCJ's failure to provide evidence showing that the average person in the general population experiences the same difficulties hearing over the telephone that Durrenberger experiences leads the court to conclude that Durrenberger is entitled to summary judgment that he is disabled because the only evidence before the court establishes that Durrenberger is unable to perform the major life activities of hearing and communicating that the average person in the general population can perform, and that Durrenberger is significantly restricted as to the manner under which he can perform the major life activities of hearing and communicating as compared to the manner under which the average person in the general population can perform those activities. <u>See</u> 29 C.F.R. § 1630.2(j)(1). <u>See also</u> <u>Ivy</u>, 192 F.3d at 516 (district court found as a matter of fact and concluded as a matter of law that plaintiff had an impairment that substantially limited the major life activity of hearing because without the assistance of hearing aids she was unable to hear people talking on a speaker telephone).

2.   <u>TDCJ Has Failed to Provide a Reasonable Accommodation for Durrenburger's Disability</u>

Asserting that his inability to hear and communicate over the telephones provided in TDCJ's visitation booths prevents him from participating in TDCJ's inmate visitation program, Durrenberger

contends that he is entitled to summary judgment that TDCJ has discriminated against him solely on the basis of his disability by failing to provide a reasonable accommodation that would allow him to participate in the program.   Asserting that it has provided reasonable accommodations for Durrenberger's disability, TDCJ contends that it is entitled to summary judgment.

(a)   Applicable Law

Regulations implementing § 504 of the RA mandate that "each [federally assisted] program or activity" to which the provision applies must be "readily accessible to and useable by handicapped persons." 28 C.F.R. § 42.521(a).  Covered entities may be required to facilitate access via the

> acquisition or redesign of equipment, reassignment of services to accessible buildings, assignment of aids to beneficiaries, delivery of services at alternate accessible sites, alteration of existing facilities, or any other method that results in making its program or activity accessible to handicapped persons.

28 C.F.R. § 42.521(b).  See Bennett-Nelson, 431 F.3d at 455 n.11.

When a disabled person shows that he is not able to participate in a public program, courts must consider whether any "reasonable accommodation" by the program provider would enable the disabled person to participate.  "Accommodation is not reasonable if it either imposes 'undue financial and administrative burdens' on a grantee, . . . or requires 'a fundamental alteration in the nature of [the] program.'"  School Board of Nassau County, Florida v. Arline, 107 S.Ct. 1123, 1131 n.17 (1987) (quoting  Southeastern

-23-

Community College v. Davis, 99 S.Ct. 2361, 2370 (1979), and citing 45 C.F.R. § 84.12(c) (listing factors to consider in determining whether accommodation would cause undue hardship)).  "Where reasonable accommodation does not overcome the effects of a person's [disability], or where reasonable accommodation causes undue hardship . . . failure . . . [to accommodate] will not be considered discrimination.  Id.  Factors that courts consider in determining if an accommodation would impose an undue hardship on the operation of the recipient's program or activity include:

>     (1) The overall size of the recipient's program or activity with respect to number of employees, number and type of facilities, and size of budget;
>
>     (2) The type of the recipient's operation, including the composition and structure of the recipient's workforce; and
>
>     (3) The nature and cost of the accommodation needed.

45 C.F.R. § 84.12(c)(1)-(3).

>     (b)   Analysis

>          **(1)  TDCJ's Asserted Accommodations**

TDCJ does not dispute that Durrenberger cannot hear and/or communicate with Bryson over the telephones in the visitation booths.  Instead, "TDCJ asserts [that] it reasonably accommodated Durrenberger by providing a booth with phones, sometimes arranging a less noisy end booth, pen and paper and by the guards trying to keep the general noise level down."[43]  TDCJ explains that on at

---

[43]TDCJ's Response, Docket Entry No. 43, p. 7.

least two occasions Durrenberger was allowed to use the end booth
(Booth #1), which is located as far away from other visitors as
possible and, therefore, considered to be less noisy.  But TDCJ
acknowledges that Booth #1 will not always be available for
Durrenberger's use because booths are randomly assigned to visitors
in order to prevent contraband drops.[44]  Moreover, TDCJ has not
presented any evidence disputing Durrenberger's statement that even
in Booth #1 he still could not hear and/or communicate with Bryson
over the telephone.[45]  TDCJ's assertions that it has accommodated
Durrenberger's disability by making pen and paper available and by
having guards try to keep the noise level down are similarly
insufficient because TDCJ has not produced any evidence from which
a reasonable fact-finder could conclude that these accommodations
allow Durrenberger to participate in the inmate visitation program.
TDCJ does not counter Durrenberger's contentions that written
communication and telephonic communication from the inmate day room
is qualitatively different from in-person visitation and constitute

---

[44]TDCJ's Motion for Summary Judgment, Docket Entry No. 40, p. 2
("[Durrenberger] was not given the end booth on each demand because
the booths are assigned randomly to prevent contraband drops."),
and p. 6 ("The end booth was not promised for each visit because
choosing booths other than randomly imposes more monitoring on
security personnel.").  See also Affidavit of Major Fred Tadlock
included in Appendix attached to TDCJ's Motion for Summary
Judgment, Docket Entry No. 40, ¶ 3; and Deposition of Fred Tadlock
included in Appendix attached to TDCJ's Motion for Summary
Judgment, Docket Entry No. 40, p. 6.

[45]Declaration of Jeremy Durrenberger, Exhibit B attached to
Durrenberger's Motion for Summary Judgment, Docket Entry No. 41,
¶¶ 14 and 18.

services and/or programs that differ from visitation.  See Chisolm
v. McManimon, 275 F.3d 315, 328-29 (3d Cir. 2001) (ability to pass
notes is not necessarily an adequate accommodation for a hearing
disability).  Accordingly, the court concludes that TDCJ's evidence
that it provided these accommodations to Durrenberger is
insufficient either to establish that it is entitled to summary
judgment or even to raise a genuine issue of material fact for
trial because TDCJ has not produced any evidence from which a
reasonable fact-finder could conclude that the accommodations it
has provided allow Durrenberger to participate in the inmate
visitation program.

### (2)  Durrenberger's Requested Accommodations

Durrenberger contends that TDCJ could reasonably accommodate
his disability by allowing him to have contact visits with Bryson,
by providing a volume amplification device for use with the
visitation booth telephones, or by allowing him to conduct visits
with Bryson in an attorney/client booth.   TDCJ responds that
contact visits are not a reasonable accommodation because they
present an elevated  security risk, but has not responded with any
evidence from which a reasonable fact-finder could conclude that
providing volume amplification devices for use with the visitation
booth telephones or allowing Durrenberger to conduct visits with
Bryson in an attorney/client booth would not reasonably accommodate
Durrenberger's disability.

(i)    Contact Visits

TDCJ policy allows contact visits with inmates for family members and other individuals with whom an inmate has a special relationship. TDCJ policy restricts contact visits with inmates because contact visits require increased vigilance for contraband and personal safety that requires additional staffing of security personnel. TDCJ argues that Durrenberger's request for a modification of this policy does not constitute a reasonable accommodation for his disability because Bryson is in prison for having violently assaulted Durrenberger. Because Durrenberger has previously been assaulted by Bryson, TDCJ argues that the possibility of another assault substantiates its denial of Durrenberger's request for contact visits with Bryson.[46] Based on this evidence and the facts of this case, the court concludes that no reasonable fact-finder could conclude that Durrenberger's request for contact visits with Bryson represents a reasonable accommodation for his disability.

(ii)   Telephone Amplification Device

Durrenberger cites the report of Prison and Jail Consultant, Ron McAndrew, as evidence that the purchase of an inexpensive amplification device for the two-way telephone in the non-contact visitation area would neither cause an undue hardship on TDCJ nor

---

[46]TDCJ's Response, Docket Entry No. 43, p. 6.

interfere with the operation of TDCJ in any way or manner.[47] McAndrew states

> accommodation for Mr. Durrenberger could have almost instantly materialized by the purchase of an amplification device for the two-way telephone in the non-contact visiting area. Such devices are commonly available from approximately $15.00 to more sophisticated units for approximately $100.00.[48]

TDCJ has not submitted any evidence contradicting McAndrew's opinion. Instead, TDCJ argues that a factual dispute exists over whether Durrenberger asked the visitation officers for an auxiliary device, and, even assuming that Durrenberger did make such a request, TDCJ argues that it was not unreasonable for it to refuse that accommodation since Durrenberger has not had an auxiliary device in the past.[49] Neither of TDCJ's arguments has any merit. TDCJ's contention that a fact dispute exists over whether Durrenberger ever asked for an amplification device is foreclosed by Major Tadlock's testimony that Durrenberger spoke to him about the possibility of obtaining an amplifying device for the telephone receiver in the visitation booths.[50] TDCJ's contention that its failure to accommodate Durrenberger's disability by providing an

---

[47]Durrenberger's Motion for Summary Judgment, Docket Entry No. 41, p. 13.

[48]Exhibit E attached to Durrenberger's Motion for Summary Judgment, Docket Entry No. 41, p. 4 ¶ 5.

[49]TDCJ's Response, Docket Entry No. 43, p. 6.

[50]Deposition of Fred Tadlock included in Appendix attached to TDCJ's Motion for Summary Judgment, Docket Entry No. 40, p. 11.

amplification device for the visitation booth telephones is reasonable because Durrenberger has not had such a device in the past is similarly foreclosed by Durrenberger's uncontradicted statements that he has relied on such devices to talk on his office telephone since 2004.[51]

Finally, TDCJ objects to Durrenberger's request that amplification devices be provided because "beyond the monetary expense of the device it would need to be at each unit where Durrenberger visited along with record of the necessary exception requiring further diversion of resources."[52] But TDCJ neither argues nor presents any evidence from which a reasonable fact-finder could conclude that this "[a]ccommodation is not reasonable [because] . . . it either imposes 'undue financial and administrative burdens' on a grantee, . . . or requires 'a fundamental alteration in the nature of [the] program.'" Arline, 107 S.Ct. at 1131 n.17 (quoting Davis, 99 S.Ct. at 2370, and citing 45 C.F.R. § 84.12(c)). Accordingly, the court concludes that Durrenberger is entitled to summary judgment that providing amplification devices for the visitation room telephones would reasonably accommodate his known disability.

---

[51]Declaration of Jeremy Durrenberger, Exhibit B attached to Durrenberger's Motion for Summary Judgment, Docket Entry No. 41, ¶ 4; Second Declaration of Jeremy Durrenberger, Exhibit A attached to Durrenberger's Response, Docket Entry No. 42, ¶¶ 3-6.

[52]TDCJ's Motion for Summary Judgment, Docket Entry No. 40, p. 6.

-29-

(iii) <u>Attorney Client Booth</u>

Durrenberger contends that

> allowing visitation in the attorney visit booths, would
> not fundamentally alter TDCJ's visitation program.  If
> "contraband drops" are a concern (though Mr. Durrenberger
> has never been accused of such misconduct), the booths
> could be thoroughly searched before and after the visits.
> A major at the Hughes Unit testified he would not deny a
> person with a hearing disability's request to use an
> attorney visit booth "right off the bat."[53]

TDCJ neither argues nor presents any evidence from which a
reasonable fact-finder could conclude that this "[a]ccommodation is
not reasonable [because] . . . it either imposes 'undue financial
and administrative burdens' on a grantee, . . . or requires 'a
fundamental alteration in the nature of [the] program.'" <u>Arline</u>,
107 S.Ct. at 1131 n.17 (quoting <u>Davis</u>, 99 S.Ct. at 2370, and citing
45 C.F.R. § 84.12(c)).  Accordingly, the court concludes that
Durrenberger is entitled to summary judgment that allowing
Durrenberger to conduct visits with Bryson in an attorney/client
booth would reasonably accommodate his known disability.

(c)   Conclusions

The undisputed evidence shows that TDCJ discriminated against
Durrenberger based on his disability by failing to provide simple,
inexpensive   accommodations,   such   as   providing   a   volume
amplification device for use with visitation booth telephones, or

---

[53]Durrenberger's Response, Docket Entry No. 42, p. 11 (citing
Deposition of Fred Tadlock included in Appendix attached to TDCJ's
Motion for Summary Judgment, Docket Entry No. 40, pp. 20-21).

allowing Durrenberger to conduct visits in an attorney/client booth. TDCJ has failed to present any evidence from which a reasonable fact-finder could conclude that the provision of either of these "[a]ccommodation[s] is not reasonable [because] . . . it either imposes 'undue financial and administrative burdens' on a grantee, . . . or requires 'a fundamental alteration in the nature of [the] program.'" Arline, 107 S.Ct. at 1131 n.17 (quoting Davis, 99 S.Ct. at 2370, and citing 45 C.F.R. § 84.12(c)). Accordingly, the court concludes that Durrenberger is entitled to summary judgment that providing a volume amplification device for use with visitation room telephones or allowing Durrenberger to use the attorney/client booth for visits with Bryson would reasonably accommodate his known disability.

## C. Compensatory Damages, Injunctive Relief, and Attorney's Fees

### 1.   Compensatory Damages

Asserting that TDCJ intentionally discriminated against him by reason of disability, Durrenberger seeks compensatory damages under the RA for reasonable travel expenses from his residence in New Caney, Texas, to the Hughes Unit in Gatesville, Texas, including gas, mileage, and wear and tear on his vehicle, food, and lodging, for each of his visits to the Hughes Unit where he was not accommodated.[54] Durrenberger seeks compensatory damages of $318.90

---

[54]Durrenberger's Motion for Summary Judgment, Docket Entry No. 41, pp. 9, 11. In Durrenberger's Reply, Docket Entry No. 44, p. 3, he argues that he has satisfied the RA's requirement that
(continued...)

for each visit.  Acknowledging that he does not know exactly how
many times he visited Bryson at the Hughes Unit and that he
"requests a hearing on the exact amount of damages. . .," 
Durrenberger asserts that "it was at least seven times, but less
than twenty times."[55]  Durrenberger asserts that Gatesville is 199
miles from New Caney, meaning that he travels 398 miles every time
he visits Bryson at the Hughes Unit.  Durrenberger seeks
reimbursement at the rate of 55 cents per mile for gas, mileage,
and wear and tear on his vehicle, an allotment of $30 for food and
$70 for lodging.

    Although TDCJ has not directly responded to Durrenberger's
Motion for Summary Judgment as to his claim for damages, TDCJ has
argued that allowing Durrenberger "to be seated in the least noisy
of the booths . . . belie discrimination as a motivating factor"
when evaluated in light of the security concerns present in this
case.[56]  In light of TDCJ's arguments and Durrenberger's
acknowledgment that he is not able to quantify the amount of his
damages, the court concludes that summary judgment is not
appropriate on Durrenberger's compensatory damage claim.

    2.  Injunctive Relief

--------

[54](...continued)
TDCJ discriminated against him "solely on the basis of his
disability."

    [55]Id. at 11.

    [56]TDCJ's Response, Docket Entry No. 43, p. 7.

-32-

Asserting that TDCJ is likely to continue to refuse him accommodations, Durrenberger seeks an injunction permanently enjoining future violations of the RA. Citing <u>City of Los Angeles v. Lyons</u>, 103 S.Ct. 1660 (1983), Durrenberger acknowledges that since he is seeking injunctive relief based on an alleged past wrong, he must show that there is a real or immediate threat that he will be wronged again. In support of his argument that there is a real or immediate threat that he will be wronged again, Durrenberger asserts that he has been denied reasonable accommodations for his disability in the past, that he is currently being denied such accommodations, and that TDCJ has made no indication that it will provide for him in the future. Durrenberger also argues that "[n]o-cost remedies exist as well, such as providing [him] an attorney visit booth to speak with his friend or allowing them to have a 'contact' visit."[57] Durrenberger contends that the public interest would be protected rather than adversely affected by granting injunctive relief because once TDCJ implements the accommodations and makes its facilities accessible, all persons with hearing disabilities will benefit.[58] The TDCJ has not responded to this argument. The court agrees that a permanent injunction is appropriate, and the court's Final Judgment will award such relief unless the TDCJ agrees to implement within a

---

[57]<u>Id.</u> at 13.

[58]<u>Id.</u>

fixed period of time one or both accommodations the court has found to be required.

### 3.  Attorney's Fees

Asserting that § 505(b) of the RA provides that in an action or proceeding to enforce or charge a violation of a provision of this title, the prevailing party is allowed a reasonable attorney's fee as part of the costs, 29 U.S.C. § 794(a), Durrenberger requests a hearing on the amount of attorney's fee to which he is entitled.[59] Durrenberger will file an affidavit and brief in support of his claim for attorney's fees by December 22, 2010.  If the parties are unable to agree on the amount of attorney's fees, TDCJ may file a response by January 28, 2011.

### IV.  Conclusions and Order

For the reasons explained above, The Texas Department of Criminal Justice's Motion for Summary Judgment (Docket Entry No. 40) is **DENIED.**  For the reasons explained above, the court concludes that Durrenberger has failed to present evidence from which a reasonable fact-finder could conclude that his request for contact visits with Bryson represents a reasonable accommodation for his disability, but that Durrenberger is entitled to summary judgment that TDCJ discriminated against him on the basis of his disability by failing to grant his requests for reasonable

---

[59]Id. at 14.

accommodation by providing a volume amplification device for use with visitation booth telephones and/or by allowing him to conduct his visits with Bryson in an attorney/client booth. Durrenberger is not entitled to summary judgment with respect to his claims for compensatory damages and attorney's fees. Accordingly, Jeremy Durrenberger's Motion for Summary Judgment Against TDCJ (Docket Entry No. 41) is **GRANTED IN PART AND DENIED IN PART.**

The Joint Pretrial Order will be filed by February 4, 2011, instead of January 7, 2011, and will be limited to Durrenberger's entitlement to compensatory damages under the RA and the amount of such damages and to any unresolved issues with respect to Durrenberger's request for attorney's fees. Docket Call will be held on February 11, 2011, at 4:00 p.m., in Court Room 9-B, 9th Floor, United States Courthouse, 515 Rusk Street, Houston, Texas 77002.

**SIGNED** at Houston, Texas, on this 2nd day of December, 2010.

SIM LAKE
UNITED STATES DISTRICT JUDGE